IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL R. McKNIGHT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _1:16-cv-77_____ |
| | § | |
| GULF COAST HEALTH | § | |
| CENTER, INC., | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I. SUMMARY**

*Plaintiff Michael R. McKnight was hired to work as a security officer at the Port Arthur branch of Defendant Gulf Coast Health Center, Inc. ("GCHC"). Around August 19, 2015, he filed a grievance complaining of sexual harassment over staff's calling him "Magic Mike" and referencing the related [2012/2015] movie/s about male strippers. Around September 23, 2015, he opposed a male co-worker's sharing a nude photo of their female colleague. Later the same day, Plaintiff was put on leave while being investigated.*

*He was fired on pretextual grounds around September 30, 2015 and sues for gender discrimination and reprisal under Title VII and the related Texas law.*

## II. JURISDICTION AND ADMINISTRATIVE EXHAUSTION[1]

1. This Court has jurisdiction under 28 U.S. Code § 1331 because the suit raises questions of federal law, such as ones arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. The Court has pendent jurisdiction over his claim under the equivalent state law: the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001 *et seq.*

3. Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) around October 12, 2015, as compared to being sexually harassed starting in July 2015 and fired in September of the same year.

4. The charge jointly was filed with the Texas Workforce Commission (TWC) Civil Rights Division pursuant to a work-sharing/deferral arrangement with EEOC.

5. EEOC issued a right-to-sue notice around January 11, 2016 and suit is being filed within the permitted 90 days of the January 13, 2016 receipt of that notice.

6. TWC issued a January 25, 2016 right-to-sue notice and this suit is being filed within the permitted 60 days of the January 25th receipt of that notice.

---

[1] Assertions in this pleading are made in addition and in the alternative to each other. They are based on information presently available and so are subject to change/correction following discovery.

7.     Defendant Gulf Coast Health Center, Inc. received timely notice from both EEOC and Plaintiff's attorney that EEOC was investigating a complaint against it.

8.     Defendant Gulf Coast has more than 15 employees. According to its website, as of 2012 it had 91 employees (85 FTE). *See* www.gulfcoasthc.org/?page_id=947. Elsewhere it is reported to have had 155 employees (152 FTE) as of 2014. *See* *www.tachc.org/center/gulf-coast-health-center-inc*.

## III. MITIGATION

9.     Plaintiff mitigated his damages to at least the extent required by law and he complied with all conditions precedent to bringing this suit.  For example, Plaintiff reasonably took advantage of any preventive or corrective opportunities provided by Defendant to avoid harm, such as by filing a grievance complaining of the harassment. He adequately sought other employment after being fired.

10.    Though Defendant GCHC was or should have been aware of Plaintiff's reports of sexual harassment and his assertion that he was fired in reprisal for protected activity, Defendant failed to exercise reasonable care to prevent and promptly correct such harassing and retaliatory actions.

## IV. PARTIES, SERVICE, AND VENUE

11.    Defendant Gulf Coast Health Center, Inc. is a Texas non-profit corporation, in

operation for roughly 25 years and serving multiple counties through what is

believed to be five locations. Its 2014 grant/contract revenue exceeded $3.5 million.

*See* www.tachc.org/center/gulf-coast-health-center-inc.

11.1.   It is being served through its registered agent Robert E. Bettac, Esq./Ogletree

Deakins/112 East Pecan St., Ste. 2700/San Antonio, TX 78205.

12.    The events giving rise to this suit and Plaintiff's employment records were at a

Defendant location in Port Arthur, Jefferson County, Texas, making the Eastern

District of Texas and its Beaumont Division an appropriate venue.

13.    Plaintiff Michael R. McKnight is an individual Texas citizen, residing in Beaumont,

Jefferson County, Texas, within the Eastern District of Texas.

14.    A copy of the suit is being provided to the Houston EEOC office. It also will be

provided (via OCRComplaint@hhs.gov) to the Office of Civil Rights of the U.S.

Department of Health and Human Services, which is a primary GCHC funder

through the Department's Health Resources and Services Administration.

14.1.   Federal laws, such as Title VI, prohibit discrimination in programs receiving federal assistance. A related claim may be added after administrative exhaustion with DHHS.

## V. FURTHER CLAIMS

15.   Title VII, 42 U.S.C. § 2000e *et seq.* prohibits an employer from hiring or discharging any individual "or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment" because of characteristics including "sex" (i.e., gender). § 2000e-2(a)(1).[2]

15.1.   It also prohibits discrimination where the protected characteristic was "a motivating factor" in the challenged decision, though back pay and reinstatement relief may be limited in such situations. If the employer proves it would have taken the same action in the absence of the protected characteristic, then relief may be further limited. § 2000e-5(g)(2)(B).[3]

---

[2] Beyond sex and retaliation, the charge also asserted race discrimination. Given the diversity of GCHC staff, absent further facts arising in discovery to support that basis (such as non-African-American employees' facing similar allegations and not being fired), that basis will be considered withdrawn.

[3] In contrast, the Texas law limits recovery of damages only under the second situation—where discrimination was a motivating factor *and* the employer shows it would have taken the same action even in the absence of discriminatory intent. TCHRA § 21.125.

15.2.  Title VII also prohibits an employer from taking an adverse action against an employee for protected activity, such as opposing a practice made unlawful by Title III or undertaking participatory activity. § 2000e-3(a).

16.  Chapter 21 of the TEXAS LABOR CODE similarly prohibits discrimination on the basis of gender and reprisal for related protected activity.

17.  Both Chapter 21 and Title VII prohibit a hostile work environment resulting from sexual harassment where it was severe or pervasive enough to alter the terms or conditions of employment and create an abusive working environment.

18.  In the present case, Mr. McKnight is a member of a protected category (sex: male) and suffered discrimination based on his gender, such as by being harassed by one or more straight females and/or one or more gay males with references to a movie about a male stripper with a similar name ("Magic Mike"/Michael McKnight).

19.  Plaintiff McKnight had worked as a security officer for Defendant for around 11 months at the start of these incidents and was last paid around $15/hour. He reported to Sonia Goodeau.

20.  Around July 9, 2015, 12:18 p.m., a care provider whose last name begins with "S" and who is believed to be an openly gay male was outside GCHC smoking, standing

beside his truck, as Plaintiff McKnight was doing rounds in the parking lot.  He said

to Plaintiff, "Hello, Magic Mike."[4]

21.   Plaintiff responded that ("Magic Mike") was not his name and that he would

appreciate it if he [Mr. S____] would refrain from calling him anything other than

"Mr. McKnight," "Michael," or "Security."

22.   Mr. Sheehan's response was that it was not a big deal. Plaintiff walked away.

23.   Mr. Sheehan later referred to Plaintiff several more times as "Magic Mike."

24.   The next week, around July 11, Plaintiff McKnight told Lillie January about the

incident and mentioned it to several other co-workers. He was cautioned to be

careful because other employees who filed grievances were gone.

25.   Around August 14, 2015, Behavioral Health Director Joyce Foreman (a female and

member of GCHC management) came to the Behavioral Health counter and said

words to the effect that she had a movie for Mr. McKnight. Though Plaintiff did not

respond, she continued, asserting she got it just for him. (Tameka Hopkins also was

present).

---

[4] It appears that *Magic Mike* opened June 29, 2012 and the sequel (*Magic Mike XXL*) was released
July 1, 2015. The movies are reported to have been popular with both women and gay men.

26.   Director Foreman, a licensed clinical social worker, said the name of the movie was "Magic Mike." Mr. McKnight held up some forms between his face and Director Foreman's in an attempt to stop the conversation, but she continued with it.

27.   He opposed her conduct by telling her he did not like that kind of nonsense and not to play with him and that he did not find anything funny or cute about the men stripping and playing with each other.

28.   Though upset, Mr. McKnight continued with his rounds. When he came back by Behavioral Health, Director Foreman continued harassing him. He again responded he did not care about Magic Mike. She said it was a love story. He repeated that he did not care. She said they were going to discuss the movie.

29.   Director Foreman's refusal to cease her unwelcome conduct and the explicit nature of the movie caused him to feel disrespected, embarrassed, and sexually harassed.

30.   Around August 17, 2015, shortly before noon, Tameka Hopkins requested over the phone that Mr. McKnight come to behavioral health. When he arrived, Lillie January already was there.

31.   Around 1:10 p.m., Plaintiff McKnight's work again took him by that area. Director Foreman said again that they were going to talk about the movie. Plaintiff responded

that the movie did not interest him. He asked her not to play with him. She

nonetheless continued talking about the movie until he walked away.

32.    When Mr. McKnight reported such misconduct to HR Assistant Riley Broussard,

his concerns were belittled. Broussard told him, "Man, they're just playing."

33.    Following the filing of a grievance complaining of sexual harassment, Plaintiff

McKnight was not told of any action's being taken to correct the situation. On the

contrary, more staff joined in the harassment.

34.    The stress became too great for Plaintiff McKnight and so he took leave from

roughly September 7-12, 2015.[5]

35.    When he returned to work he started on his rounds and in building two someone

yelled down the hall at him "Magic Mike is back."

36.    Around September 23, 2015, co-worker Eric Redman showed on his phone one or

more nude photos of one of their female co-workers to Plaintiff. Mr. McKnight

opposed the conduct by objecting that this was not appropriate for the workplace.

---

[5] Those who would consider this an overreaction should ponder whether they would likewise
consider it silly for a female to be upset by her colleagues at work repeatedly calling her by a famous
stripper's name.

36.1.   Mr. Redman is believed to be close to GCHC Director of Operations Tim

Carter and possibly to be related to him.

37.   Later that same day, around 6:22 p.m., Riley Broussard (HR assistant) and Tyler

Dupree (HR Director) asked Plaintiff McKnight to meet with them.

38.   Tyler Dupree told him a third party alleged that Mr. McKnight threatened to kick a

person in the "balls."  Mr. Broussard, corrected him, saying instead it was kick his

"ass." They said Mr. McKnight was being put on leave for an investigation.

39.   Plaintiff McKnight asked which of the threatening comments he was said to have

made (kick his ass or kick him in the balls). Neither of them responded, so Mr.

McKnight got up and left the room.

40.   Around September 24, 2015, 10:23 a.m., Tyler Dupree called Plaintiff and told him

not to come in because the investigation was continuing and a witness was out.

41.   Around September 30, 2015, 8:40 p.m., Plaintiff spoke by phone with Tyler Dupree,

who told him he was being terminated for making a threat of violence. Dupree

claimed he had signed statements from a male and a female staff member working

in the pharmacy who heard McKnight make a threatening statement and that the

lawyer (for GCHC) had said to go ahead and fire him, based on Tim Carter's position. (As noted above, Carter, an RN with a law degree, is Operations Director).

42.    Within 300 days (in fact, within 180 days) of the events complained of, Plaintiff McKnight filed a charge of discrimination with EEOC. Around December 30, 2015, around 9:44 a.m., his attorney notified the EEOC investigator that McKnight also asserted that McKnight's opposition to the showing at the office of a nude photo of a female co-worker constituted protected activity.

43.    In addition to any notice that EEOC may have provided to Defendant GCHC, on January 22, 2016, Mr. McKnight's attorney faxed to GCHC Director of Operations Tim Carter a copy of the charge of discrimination and the December 30, 2015 notice of the additional protected activity.

44.    In spite of multiple communications from Plaintiff's law firm to Defendant GCHC, Defendant did not bother to respond to or even acknowledge them, consistent with its earlier refusal to take preventive and corrective action.

45.    As set out above, Plaintiff was a member of one or more protected categories (sex: male; race: African-American; and persons who have engaged in protected activity).

46.   He was subjected to a hostile work environment based on his gender that became so intolerable he had to take leave to escape the stress. The conduct, which was undertaken by multiple staff members up to at least the level of Director of Behavioral Health (a management official) was severe or pervasive enough to alter the terms or conditions of Plaintiff's employment and create a hostile or abusive work environment.

47.   Defendant GCHC knew, or in the exercise of reasonable care, should have known, that Plaintiff McKnight was being sexually harassed because of his gender. For example, the harassment was known by or communicated to a person who had the authority to receive the report, such as Director Foreman and/or HR staff. As well, it was open and obvious, such that Defendant should have known of it.  For example, some of it occurred out in open areas of the building. Nonetheless, Defendant GCHC failed to take prompt remedial action designed to stop the harassment.

48.   Plaintiff McKnight engaged in protected activity such as opposing the harassment in conversations with others, filing a grievance about the harassment, and opposing a co-worker at the office's showing a nude photo of a female colleague.

49.   Because of one or more instances of protected activity, he was subjected to the adverse action of being terminated, a consequence that would tend to discourage a reasonable worker from pursuing further protected activity.

50.   The relationship between the protected activity and the termination is demonstrated in ways among which is one or more of the following:

50.1.   The link in time between the protected activity (July – September 2015) and the termination (September 2015).

50.2.   Knowledge on the part of one or more decision-makers as to the termination that Mr. McKnight had engaged in protected activity.

50.3.   The pretextual and conflicting explanations given for the termination (e.g., the claim he had threatened to kick someone in the balls versus the claim he said he would kick someone in the ass, plus the fact that he had not made either comment).

## VI. DAMAGES

51.    As a result of the discrimination and/or retaliation against him, Plaintiff McKnight

suffered damages, among which are one or more of the following:

51.1.    monetary damages, such as for back pay and benefits lost due to the

termination (up to the point of substantially equivalent employment) and

having to take leave to deal with the stress of the harassment; front pay (also

until the point of substantially equivalent employment) or, alternatively,

reinstatement;

51.2.    medical expenses;

51.3.    compensatory damages, in the past and future, such as for emotional pain,

suffering, inconvenience, mental anguish, and loss of enjoyment of life; for

example, Plaintiff was humiliated by the repeated harassment at work and by

being terminated based on a (false) claim he threatened a co-worker;

51.4.    attorney fees, costs, and expenses;

51.5.    in the event Defendant GCHC's actions/motives are found to reflect the

requisite level of intent on the part of a staff member acting in a managerial

capacity, Plaintiff also seeks an award of exemplary damages under Title VII or the Texas Commission on Human Rights Act.

    51.5.1. For example, Behavioral Health Director Joyce Foreman took part in the sexual harassment of Plaintiff and it is presently believed that the Director of Operations took part in the decision to fire Plaintiff; and

51.6.   pre- and post-judgment interest; and such other relief to which the Court may find Plaintiff entitled under law and equity.[6]

## VII.   JURY REQUEST

52.    Plaintiff requests a jury trial as to all issues that a jury may decide.

## VIII. PRAYER

53.    FOR SUCH REASONS, Plaintiff requests a finding of discrimination and/or retaliation and that judgment in his favor be entered, with Defendant's being denied any relief.

---

[6] To the extent that Plaintiff's race-based claim remains a part of the suit, he also seeks such additional relief as may be available under 42 U.S.C. § 1981 for denial of his equal rights on the basis of color/race.

Respectfully Submitted,

SCHLEICHER LAW FIRM, PLLC

1227 N. Valley Mills Dr., Ste. 208

Waco, TX 76710

(254) 776-3939

(254) 776-4001 fax


By:  /s/ David R. Schleicher

    David R. Schleicher

    TX Bar No. 17753780

    David@gov.law